UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT CINCINNATI

| | |
|---|---|
| PHARMACY CORPORATION OF AMERICA d/b/a PHARMERICA, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Civil Action No.: 1:23-cv-242 ) |
| BUCKEYE FOREST AT FAIRFIELD, LLC d/b/a AYDEN HEALTHCARE OF FAIRFIELD; BUCKEYE FOREST AT JACKSON, LLC d/b/a AYDEN HEALTHCARE OF JACKSON; BUCKEYE FOREST AT MADEIRA, LLC d/b/a AYDEN HEALTHCARE OF MADEIRA; BUCKEYE FOREST AT PORTSMOUTH d/b/a AYDEN HEALTHCARE OF ROSEMOUNT PAVILION; and COTTINGHAM MANAGEMENT, LLC d/b/a LIONSTONE CARE MANAGEMENT | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

## COMPLAINT

Plaintiff Pharmacy Corporation of America d/b/a PharMerica ("PharMerica") for its Complaint against Defendants Buckeye Forest at Fairfield, LLC d/b/a Ayden Healthcare of Fairfield ("Fairfield"), Buckeye Forest at Jackson, LLC d/b/a Ayden Healthcare of Jackson ("Jackson"), Buckeye Forest at Madeira, LLC d/b/a Ayden Healthcare of Madeira ("Madeira"), Buckeye Forest at Portsmouth, LLC d/b/a Ayden Healthcare of Rosemount Pavilion ("Rosemount") (Fairfield, Jackson, Madeira, and Rosemount are together the "Facility Defendants"), and Cottingham Management, LLC d/b/a Lionstone Care Management

("Lionstone") (the Facility Defendants and Lionstone are together the "Defendants") states as follows:

## NATURE OF THE ACTION

1. This action arises out of Defendants' failure and refusal to pay PharMerica for pharmacy-related goods and services provided by PharMerica to Facility Defendants for the residents of the skilled nursing facilities in Ohio (collectively the "Facilities"[1]), which are operated, managed, and owned, directly or indirectly, by Facility Defendants and Lionstone, as well as for improperly terminating a May 1, 2020 Pharmacy Services Agreement (the "PSA")[2] Lionstone assumed with respect to the Facilities through a January 1, 2022 Letter of Understanding (the "LOU")[3] when it ceased ordering pharmacy goods and services from PharMerica for which PharMerica was the exclusive provider of pharmaceuticals. Lionstone has prevented the Facility Defendants from paying PharMerica for the pharmacy-related goods and services provided.

## THE PARTIES

2. Pharmacy Corporation of America is a California corporation with its principal place of business in Louisville, Kentucky. Thus, for purposes of diversity jurisdiction, Pharmacy Corporation of America is a citizen of California and Kentucky.

3. Buckeye Forest at Fairfield, LLC is an Ohio limited liability company whose members are Solomon Kazarnovsky and Abba Stein, who are residents of New York. Thus, for purposes of diversity jurisdiction, Buckeye Forest at Fairfield, LLC is a citizen of New York.

---

[1] The Facilities are collectively referred to the as the skilled nursing facilities located at: (1) 3801 Woodridge Boulevard, Fairfield, Ohio 45014 ("Fairfield Facility"); (2) 8668 State Route 93, Jackson, Ohio 45640 ("Jackson Facility"); (3) 5970 Kenwood Road, Madeira, Ohio 45243 ("Madeira Facility"); and (4) 20 Easter Drive, Portsmouth, Ohio 45662 ("Portsmouth Facility").
[2] The PSA contains commercially sensitive information, including pricing information, and thus is not attached hereto. It will be provided to the Court and Defendant upon request.
[3] The LOU also contains commercially sensitive information and thus is not attached hereto. It will be provided to the Court and Defendant upon request.

4. Buckeye Forest at Jackson, LLC is an Ohio limited liability company whose members are Solomon Kazarnovsky and Abba Stein, who are residents of New York. Thus, for purposes of diversity jurisdiction, Buckeye Forest at Jackson, LLC is a citizen of New York.

5. Buckeye Forest at Madeira, LLC is an Ohio limited liability company whose members are Solomon Kazarnovsky and Abba Stein, who are residents of New York. Thus, for purposes of diversity jurisdiction, Buckeye Forest at Madeira, LLC is a citizen of New York.

6. Buckeye Forest at Portsmouth, LLC is an Ohio limited liability company whose members are Solomon Kazarnovsky and Abba Stein, who are residents of New York. Thus, for purposes of diversity jurisdiction, Buckeye Forest at Portsmouth, LLC is a citizen of New York.

7. Cottingham Management, LLC is an Ohio limited liability company whose members are Solomon Kazarnovsky and Abba Stein, who are residents of New York. Thus, for purposes of diversity jurisdiction, Cottingham Management, LLC is a citizen of New York.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332 in that there is complete diversity of citizenship between PharMerica and Defendants and the amount in controversy exceeds $75,000, exclusive of interest and costs.

9. This Court has personal jurisdiction over Defendants because they contracted to do business in this state and this judicial district and conducted business in this judicial district.

10. Venue is proper in this Court because Defendant are subject to this Court's personal jurisdiction and a substantial portion of the events and omissions giving rise to this action took place in this judicial district.

## STATEMENT OF FACTS

### *The PSA*

11. Effective May 1, 2020, PharMerica entered into the PSA with Boulder Healthcare ("Boulder") on behalf of seventeen (17) skilled nursing facilities for PharMerica to provide pharmacy-related goods and services to the residents of the skilled nursing facilities which at the time were operated and managed by Boulder in exchange for payment from Boulder.

12. The four (4) Facilities at issue here are amongst the skilled nursing facilities covered by the PSA.

13. Pursuant to the PSA, Boulder agreed that PharMerica would be the exclusive and preferred provider of pharmacy-related goods to the Facilities. PSA § 4.

14. The PSA further required Boulder, on behalf of the Facilities, to remit payment for the pharmacy-related goods to PharMerica within ninety (90) days of the account statement date, except in the event the PSA is being terminated, in which case all charges are required to be remitted within thirty (30) days of the statement date. PSA § 5F(1); 6C.

15. The PSA required Boulder, on behalf of the Facilities, to provide written notice to PharMerica of any billing disputes in the manner and format prescribed before the payment due date, and to pay all undisputed amounts on or before the payment due date. PSA § 5D; 5F.

16. For any undisputed charges that have not been paid within the required ninety (90) days, interest accrues at the annual rate of 10%, and PharMerica is entitled to all costs and expenses incurred in collecting payment of amounts due under the PSA, including, but not limited to, its reasonable attorneys' fees. PSA § 5F(2).

17. The PSA allows either party to terminate the agreement with or without cause by providing the other party with a written notice of non-renewal at least one hundred and twenty (120) days before the expiration of the initial term of the agreement. If the party desiring to

terminate fails to comply with such requirements, the PSA automatically renews for an additional one-year term. PSA § 6A.

18. Neither party exercised its option to terminate the PSA prior to an automatic renewal.

19. The initial term of the PSA lasted until October 31, 2020, after which it automatically renewed for successive one-year terms pursuant to its terms, with the most recent renewal occurring on October 31, 2022, and thereby renewing the agreement through October 31, 2023. PSA § 1.

20. The PSA also allows either party to terminate the agreement with or without cause by providing the other party with at least ninety (90) days' written notice. PSA § 6B.

21. Notice under the PSA is required to be sent by certified mail, postage prepaid, return receipt requested, or by use of a national overnight delivery service, to the other party at the address listed in the signature portion of the PSA or at another address designated by the other party. PSA § 17D. Any notice that is not delivered in the manner specified in the PSA does not constitute effective notice under the PSA. *Id.*

22. Boulder could not terminate the PSA if more than 25% of the total undisputed outstanding charges were past due when the termination notice was given, and any attempted termination was null and void if more than 25% of the total undisputed outstanding charges were past due on the purported effective date of the termination. PSA § 6D. Further, termination does not excuse Boulder from payment of charges owed to PharMerica. PSA § 6C.

### *Lionstone Purchases the Facilities and Assumes the PSA*

23. Upon information and belief, Lionstone purchased the Facilities from Boulder on or before January 1, 2022.

24. On January 1, 2022, Lionstone and PharMerica entered the LOU. Pursuant to the LOU, Lionstone acknowledged its purchase of the Facilities from Boulder, expressly assumed Boulder's obligations under the PSA with respect to the Facilities, and agreed to be bound by the PSA.

25. The only material provision of the PSA that was modified in the LOU pertained to the required notice to terminate the PSA. Specifically, the LOU changed Section 6B of the PSA to require sixty (60) days' written notice to terminate the PSA from January 1, 2022 forward, with all other material terms remaining the same.

26. Defendants submitted written orders to PharMerica for pharmacy-related goods and services for residents of the Facilities.

27. PharMerica filled those orders and delivered the ordered pharmacy-related goods and services to Facility Defendants. Facility Defendants received and accepted PharMerica's deliveries of those pharmacy-related goods and services.

28. PharMerica submitted detailed written account statements to Defendants for the pharmacy-related goods and services provided and satisfied all other conditions precedent to payment under the PSA as assumed by Lionstone on behalf of the Facility Defendants through the LOU.

29. Defendants did not object to or dispute the invoice charges at the time and in the manner required by the PSA.

30. Defendants failed to pay PharMerica's account statements as they became due and owing under the PSA.

31. Despite PharMerica's demands for the sums due and owing under the PSA, Defendants have failed and refused to pay for all the pharmacy-related goods and services provided by and invoiced by PharMerica.

32. Upon information and belief, Defendants have been reimbursed by Medicare for all or a significant portion of the goods and services provided by PharMerica and have directly or indirectly benefited from such reimbursements.

33. Upon information and belief, Defendants and/or their members have reported or will report PharMerica's account statement charges as valid expenses to the Internal Revenue Service for the purpose of reducing the amount of adjusted gross income on which Defendants must pay taxes. As a result, Defendants and/or their members will pay lower taxes than they otherwise would have had to pay.

34. Upon information and belief, Defendants have reported PharMerica's account statement charges as valid expenses to Medicare and/or Medicaid on Defendants' cost reports.

### *Improper Termination*

35. On or about November 17, 2022, PharMerica received an email purporting to be sixty (60) days' written notice of discontinuation of PharMerica's services at the Facilities (the "Termination Notice").

36. The Termination Notice was not delivered to PharMerica's address as specified for notice in the PSA, and was not otherwise delivered via certified mail, postage prepaid, return receipt requested, or via national overnight delivery service, as required by the PSA. As such, the Termination Notice did not constitute notice under the PSA.

37. Moreover, on November 17, 2022, more than 25% of Defendants' total undisputed outstanding charges were past due, rendering the purported Termination Notice null and void under Section 6D of the PSA.

38. After delivering the Termination Notice, on January 16, 2023, Defendants ceased ordering pharmacy goods and services for the Facilities from PharMerica and stated they would no longer utilize PharMerica as the provider of pharmacy-related goods and services for the Facilities.

39. On January 16, 2023, more than 25% of Defendants' total undisputed outstanding charges were past due, again rendering Defendants' attempted termination null and void under the PSA.

40. Defendants did not provide PharMerica with at least sixty (60) days' written notice of the termination and such failure constitutes a material breach of the PSA, as modified by the LOU.

41. Because of Defendants' material non-compliance with the notice requirements before attempting to terminate the PSA, and because Defendants have not paid PharMerica all outstanding amounts due, the PSA has not terminated. Accordingly, the PSA remains in effect through the end of its current term on October 31, 2023.

42. Defendants' improper attempt to terminate the PSA, cessation of ordering pharmacy goods and services for the Facilities, and failure to pay all amounts due and owing to PharMerica for the pharmacy-related goods and services Defendants ordered and PharMerica provided, has caused PharMerica to suffer pecuniary damages.

43. Further, as a result of Defendants' decision to cease utilizing PharMerica for orders of pharmacy-related goods and services for the Facilities, PharMerica has suffered damages in the form of lost profits on orders that would have been placed throughout the remainder of the PSA term, which does not end until October 31, 2023, at the earliest.

## COUNT I – BREACH OF CONTRACT

44. PharMerica hereby incorporates by reference the allegations set forth above.

45. The PSA is a valid and binding agreement between Boulder and PharMerica for PharMerica to provide pharmacy goods and services to Boulder in exchange for compensation by Boulder.

46. The LOU is a valid and binding agreement between Lionstone, on its own and on behalf of the Facility Defendants, and PharMerica whereby Lionstone assumed the PSA and Boulder's obligations thereunder with respect to the Facilities.

47. PharMerica performed all its obligations under the PSA, including fulfilling all conditions precedent to payment by Defendants.

48. Without legal justification or excuse, Defendants materially breached the PSA and LOU with PharMerica by failing to pay sums due and owing for the goods and services provided, improperly attempting to terminate the PSA via email while in arrears on more than 25% of total undisputed outstanding charges, and ceasing orders of pharmacy-related goods and services from PharMerica for the Facilities and failing to maintain PharMerica as the exclusive provider of pharmacy-related goods and services to the Facilities for the duration of the PSA.

49. As a direct and proximate result of Defendants' breaches of the PSA and LOU, PharMerica has suffered damages, including, but not limited to, amounts due and owing for pharmacy goods and services PharMerica provided to Defendants and the residents of the Facilities, which Defendants have not paid for, and lost profits PharMerica would have earned on orders for pharmacy-related goods and services that would have been placed between January 16, 2023 and October 31, 2023. The damages PharMerica has suffered as a direct and proximate result

of the breaches of the PSA and LOU are substantial and exceed the jurisdictional minimum of this Court.

50. Interest is accruing on the amounts owed by Defendants for unpaid pharmacy goods and services pursuant to the PSA and the law.

51. PharMerica has incurred attorneys' fees and other costs seeking to collect amounts due to it, including in preparing and filing this action, all of which are the responsibility of Defendants pursuant to the PSA. PharMerica is likely to incur substantial additional attorneys' fees as this case is litigated and prepared for trial, which also shall be the responsibility of Defendants.

## **COUNT II – UNJUST ENRICHMENT/CONSTRUCTIVE TRUST**

52. To the extent not otherwise inconsistent with this Count II, PharMerica hereby incorporates by reference the allegations set forth in this Complaint.

53. In the alternative to Count I, PharMerica brings this claim for unjust enrichment/constructive trust.

54. PharMerica conferred a benefit on Defendants by providing valuable pharmacy-related goods and services to the Facilities.

55. Defendants did not pay for those goods and services.

56. PharMerica's goods and services were provided under circumstances pursuant to which Defendants knew, or reasonably should have known, that PharMerica would expect to be compensated.

57. Defendants have knowingly and willingly received, or will receive, reimbursement by Medicare, directly or indirectly, for goods and services provided by PharMerica, and have wrongfully and intentionally withheld or will withhold such amounts from PharMerica.

58. Consequently, Defendants have been unjustly enriched through the receipt of such goods and services and at the expense and to the detriment of PharMerica.

59. Furthermore, Defendants had, and continue to have, a legal and fiduciary duty to immediately remit proceeds received in reimbursements from Medicare to PharMerica if they have not timely paid invoices as required by the PSA and/or implied contract.

60. By withholding payment from PharMerica for pharmacy-related goods and services for which Defendants have received Medicare reimbursement, Defendants have been unjustly enriched.

61. It is against equity and good conscience to permit Defendants to retain the Medicare reimbursements without paying for the goods and services PharMerica provided and for which those reimbursements were made.

62. For these reasons, a constructive trust should be imposed on any and all proceeds which have been, or hereafter are, received by Defendants as reimbursement by Medicare for pharmacy goods and services provided by PharMerica.

63. PharMerica is entitled to recover damages from Defendants in an amount to be proven at trial.

## COUNT III – PROMISSORY ESTOPPEL

64. To the extent not otherwise inconsistent with this Count III, PharMerica hereby incorporates by reference the allegations previously set forth in this Complaint.

65. In the alternative to Counts I and II, PharMerica brings this claim for promissory estoppel.

66. Defendants made clear and unambiguous promises and representations to PharMerica that it would pay PharMerica the outstanding balance owed under the PSA throughout the course of their relationship.

67. Defendants made such promises and representations for the purpose of inducing PharMerica to provide and continue to provide pharmacy-related goods and services to the Facilities and forego legal action.

68. PharMerica reasonably relied upon these representations of payment when it provided and continued to provide pharmacy-related goods and services to the Facilities.

69. As a direct and proximate result of PharMerica's justifiable reliance on Defendants' promises, PharMerica has suffered pecuniary damages in that PharMerica has not been paid for the goods and services it delivered to the Facilities.

70. Injustice can be avoided only by enforcement of Defendants' representations and promises.

71. PharMerica is entitled to recover damages from Defendants in an amount to be proven at trial.

## COUNT IV – QUANTUM MERUIT

72. To the extent not otherwise inconsistent with this Count IV, PharMerica hereby incorporates by reference the allegations previously set forth in this Complaint.

73. In the alternative to Counts I, II, and III, PharMerica brings this claim for quantum meruit.

74. PharMerica rendered valuable pharmacy-related goods and services to Defendants.

75. Defendants accepted PharMerica's pharmacy-related goods and services, Defendants received those pharmacy-related goods and services, and PharMerica rendered the pharmacy-related goods and services with Defendants' knowledge and consent.

76. Defendants accepted PharMerica's pharmacy-related goods and services under such circumstances that Defendants were reasonably notified that PharMerica expected to be paid by Defendants.

77. Injustice can be avoided only by Defendants' payment to PharMerica for the pharmacy-related goods and services provided.

78. PharMerica is entitled to recover damages from Defendants in an amount to be proven at trial.

## COUNT V – ACCOUNT STATED

79. To the extent not otherwise inconsistent with this Count V, PharMerica hereby incorporates by reference the allegations previously set forth in this Complaint.

80. In the alternative to Counts I, II, III, and IV, PharMerica brings this claim for account stated against Defendants.

81. Pursuant to the PSA, PharMerica provided pharmacy related goods and services to Defendants, and Defendants are obligated to pay PharMerica for those pharmacy-related goods and services.

82. PharMerica delivered detailed monthly invoices for pharmacy-related goods and services supplied by PharMerica to Defendants. Defendants received those invoices.

83. Defendants did not object to or dispute such invoices at all, let alone within a reasonable period of time. Instead, Defendants paid some invoices and promised to make further payments on the invoices.

84. By ordering pharmacy-related goods and services without objecting to the invoices, making partial payments, and promising to make additional payments, Defendants established a practice of settling accounts with PharMerica and accepted the agreed upon stated account in the invoices as being due and owing.

85. Defendants, without justification, excuse, or dispute of such invoices, have not paid PharMerica all of the amounts invoiced, totaling $492,461.52, exclusive of interest and late fees.

86. PharMerica is entitled to recover from Defendants for the stated accounts in an amount to be proven at trial.

## COUNT VI – ATTORNEYS' FEES

87. To the extent not inconsistent with this Count VI, PharMerica hereby incorporates by reference the allegations set forth above.

88. The PSA provides for the recovery of attorneys' fees incurred by PharMerica in the collection of amounts due and owing. Lionstone, on its own and on behalf of the Facility Defendants, expressly assumed and agreed to be bound by this provision of the PSA by executing the LOU between it and PharMerica.

89. PharMerica has incurred attorneys' fees and other costs seeking to collect amounts due to it, including in preparing and filing this action, all of which are the responsibility of Defendants pursuant to the PSA. PharMerica is likely to incur substantial additional attorneys' fees as this case is litigated and prepared for trial, which also shall be the responsibility of Defendants.

## PRAYER FOR RELIEF

WHEREFORE, PharMerica requests judgment against Defendants as follows:

1. An award of compensatory damages in an amount to be proven at trial;

2. An award of lost profits in an amount to be proven at trial;

3. The imposition of a constructive trust on sums received by Defendants as Medicare reimbursement for pharmaceutical products and services provided by PharMerica and not paid for by Defendants;

4. PharMerica's costs, fees, and disbursements, including reasonable attorneys' fees;

5. Pre-judgment and post-judgment interest; and

6. All other appropriate relief.

DATED:  April 28, 2023

Respectfully submitted,

FULTZ MADDOX DICKENS PLC

By: /s/  *Elizabeth B. Noland*

Elizabeth B. Noland (#0076068)
Jennifer Metzger Stinnett *(pro hac vice admission to be sought)*
William H. Mazur *(pro hac vice admission to be sought)*
FULTZ MADDOX DICKENS PLC
101 South Fifth Street, 27th Floor
Louisville, Kentucky 40202
Tel: (502) 588-2000
Fax: (502) 588-2020
ebnoland@fmdlegal.com
jstinnett@fmdlegal.com
wmazur@fmdlegal.com

*Counsel for Plaintiff*